UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| AUSTIN ECKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00289-WTL-DLP |
| | ) | |
| BARBARA RIGGS, | ) | |
| | ) | |
| Defendant. | ) | |

**Order Granting Motion for Summary Judgment**

Plaintiff Austin Eckes is an inmate who at all relevant times was incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). He brought this action pro se under 42 U.S.C. § 1983 against Nurse Barbara Riggs, who he alleges denied him a splint for his broken finger and failed to adequately treat his stomach ulcers.

Presently pending is Nurse Riggs' motion for summary judgment. Mr. Eckes has not responded, and the time to do so has passed. This leaves Nurse Riggs' motion unopposed. For the reasons explained below, Nurse Riggs' motion for summary judgment is **granted**.

**I.
Summary Judgment Legal Standard**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Barbera v. Pearson Education, Inc.*, 906 F.3d 621, 628 (7th Cir. 2018). The Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

Because Mr. Eckes has failed to respond to Nurse Riggs' motion, he has conceded her version of the events. *See McMahan v. Deutsche Bank AG*, 892 F.3d 926, 929 n.2 (7th Cir. 2018) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission." (citation and quotation marks omitted)); *see also* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."). This does not alter the standard for assessing a Rule 56 motion, but it does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II.
## Background

The following factual background is drawn from the undisputed evidence submitted by Nurse Riggs. At all relevant times, Mr. Eckes was an inmate at Wabash Valley and Nurse Riggs employed there as a nurse. As a nurse at Wabash Valley, Nurse Riggs could assess patients and follow provider orders, such as administering medications. Dkt. No. 32-1 at 1. But she could not prescribe medications, diagnose patients, or dictate their care. *Id.*

In early February 2018, Mr. Eckes broke his pinky finger playing basketball. *Id.* at 2-3. Dr. Byrd explained to Mr. Eckes that x-rays confirmed his finger was broken. *Id.* at 3. Dr. Byrd initially applied an ulnar gutter splint, but that caused Mr. Eckes pain, so Dr. Byrd removed it and applied a tongue blade splint. *Id.* This splint was to be worn until Mr. Eckes saw an outside specialist. *Id.* On two occasions in late February 2018 Mr. Eckes submitted a Request for Healthcare ("RFHC") form requesting medical tape for his splint, and Nurse Riggs responded on both occasions by providing him medical tape. *Id.*

Mr. Eckes saw an orthopedic specialist on March 2, 2018. *Id.* at 4. The orthopedic specialist provided Mr. Eckes with a "buddy strap" to replace his splint and instructed him to wear it except when showering or washing his hands. *Id.* The buddy strap, unlike the splint, kept the fourth and fifth fingers together. *Id.* The orthopedic specialist also recommended gentle range of motion exercises and not to hyperextend his finger beyond the normal range of motion. *Id.* The splint was thus not to be used any longer, as it hyperextended his finger. *Id.*

Two days later, Mr. Eckes overdosed on Tylenol and Ibuprofen and was taken to the hospital via ambulance. *Id.* Testing at the hospital revealed that Mr. Eckes had three superficial, non-bleeding gastric ulcers. *Id.* Biopsies of the ulcers were normal. *Id.* Mr. Eckes returned to Wabash Valley on March 8, 2018. *Id.*

Dr. Denning met with Mr. Eckes on March 13, 2018. Because of the ulcers, Dr. Denning recommended to Mr. Eckes that he avoid fatty, spicy, and acidic foods, as well as caffeine and peppermint. *Id.* at 5. However, Dr. Denning did not order Mr. Eckes to be placed on a special diet. *Id.* Mr. Eckes could not receive a special diet without an order from his medical provider, and Nurse Riggs did not have the authority to issue such an order. *Id.*

On March 27, 2018, Mr. Eckes went to the hospital for an MRI on his finger. *Id.* When he returned to Wabash Valley that same day, he submitted a RFHC asking for the MRI results and whether he would need surgery. *Id.*; Dkt. No. 32-2 at 91. Nurse Riggs responded to the RFHC by informing Mr. Eckes that he was scheduled for a follow-up appointment with Dr. Denning during which he could discuss the MRI results. Dkt. No. 32-1 at 5.

During his deposition, Mr. Eckes stated that Nurse Riggs conducted sick calls visits sometime between April 2 and April 30, 2018, while Mr. Eckes was in segregated housing. Dkt. No. 32-3 at 21-23. Instead of calling him out of his cell, she came to his cell door to discuss his medical issues. *Id.* at 23. Mr. Eckes testified that Nurse Riggs went against the doctor's orders and refused to give Mr. Eckes a splint and medical tape to keep his finger straight. *Id.* at 22. Although Nurse Riggs testifies that she has no recollection of this specific interaction, she states that she never would have denied him a splint while walking by his cell and would have instead ordered him to follow procedures and fill out a RFHC. Dkt. No. 32-1 at 9.

Mr. Eckes filed ten separate RFHCs on May 9, 2018. *Id.* at 6. Nurse Riggs was responsible for responding to seven of them. *Id.*; *see* Dkt. No. 32-2 at 108-114. In those seven RFHC, Mr. Eckes requested a splint for his finger, requested a special diet due to stomach pain, and requested a blood test, a stomach x-ray, and testing for diabetes. Dkt. No. 32-2 at 108-114. Because Nurse Riggs determined that none of the RFHC requested urgent medical attention or otherwise set forth an issue that required immediate attention, Nurse Riggs responded to all seven RFHCs by stating that Mr. Eckes could discuss these issues with the provider at his next scheduled follow-up appointment. *Id.* In response to his three other RFHCs submitted that day, Mr. Eckes was scheduled for a nurse sick call appointment, but he refused to attend it. Dkt. No. 32-1 at 8.

Although Mr. Eckes continued filing RFHC in late May 2018, he continued to refuse nurse sick call appointments. *Id.*

On May 24, 2019, Dr. Soto evaluated Mr. Eckes' finger. *Id.* Dr. Soto provided Mr. Eckes with another buddy strap to wear and scheduled a follow-up in two months. *Id.* Two months later, an x-ray of Mr. Eckes' finger was normal, and Mr. Eckes had a full range of motion and no pain in his finger. *Id.* at 8-9.

### III.
### Discussion

Mr. Eckes brought this action alleging that Nurse Riggs violated his Eighth Amendment rights when (1) she failed to provide him a splint for his broken finger; and (2) when she failed to acquire him adequate treatment for his stomach issues. The Court will first set forth the legal standards governing Eighth Amendment medical claims before addressing Mr. Eckes' two claims in turn.

Because Mr. Eckes was a prisoner during all relevant periods, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

"To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an

objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc). To show deliberate indifference, "a plaintiff does not need to show that the official intended harm or believed that harm would occur," but "showing mere negligence is not enough." *Id.* at 728. Instead, a plaintiff must "provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Id.*

For the purposes of this motion, Nurse Riggs does not dispute that Mr. Eckes' medical conditions were objectively serious. Thus, only the second element is at issue for each of Mr. Eckes' claims—whether Nurse Riggs was deliberately indifferent to those medical conditions.

### A. Stomach Ulcers and Pain

To assess whether Nurse Riggs was deliberately indifferent to Mr. Eckes' stomach ulcers and stomach pain, the Court must begin by noting that Nurse Riggs can only be liable under § 1983 to the extent she was personally involved in Mr. Eckes' medical treatment. *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) ("For constitutional violations under § 1983 or *Bivens*, a government official is only liable for his or her own misconduct." (citation and quotation marks omitted)). Regarding Mr. Eckes' stomach issues, Nurse Riggs' only involvement was when she responded to several RFHC regarding his stomach on May 9, 2018.

Nurse Riggs maintains that she responded appropriately to Mr. Eckes' RFHCs on May 9 and thus could not have been deliberately indifferent to his stomach ulcers or the pain they caused. The six RFHC that pertained to Mr. Eckes' stomach did not request immediate medical attention; instead, they requested an order that he be placed on a special diet and three different types of diagnostic testing (a blood test, a stomach x-ray, and testing for diabetes). *See* Dkt. No. 32-2 at

108-114. Nurse Riggs responded to all of the RFHC by stating that Mr. Eckes could discuss these issues at his next scheduled follow-up appointment with Dr. Denning. *Id.*

A reasonable jury could not conclude that Nurse Riggs was deliberately indifferent to Mr. Eckes' stomach issues by stating that they could be discussed with the doctor at his next appointment. Nurse Riggs cannot order a special diet nor order the diagnostic testing requested by Mr. Eckes. Dkt. No. 32-1 at 1, 5. All she could do was refer these requests to a physician. Thus, by doing all she could to address Mr. Eckes' complaints, she did not exhibit deliberate indifference to them. Nurse Riggs' response may have been inappropriate had Mr. Eckes' RFHCs set forth a medical emergency or requested immediate medical treatment. Because they did not, there is no evidence that Nurse Riggs "disregarded a substantial risk of harm" by allowing Mr. Eckes' concerns to be addressed at his upcoming appointment with a provider who had the authority to provide the relief Mr. Eckes requested. *Petties*, 836 F.3d at 728; *see Rankin v. Baker*, --- Fed. Appx. ----, 2019 WL 1773130, *2 (7th Cir. 2019) (holding that there was no evidence of deliberate indifference because the plaintiff failed to produce evidence that the defendant doctor "even saw these asserted conditions, *let alone that they required immediate intervention*" (emphasis added)).

Nurse Riggs is therefore entitled to summary judgment on this claim.

### B. Denial of Splint for Broken Finger

Mr. Eckes alleges that Nurse Riggs was deliberately indifferent to his broken finger when, contrary to Dr. Byrd's order, she denied him a splint and medical tape for his finger. As set forth above, sometime between April 2 and April 30, 2018, Mr. Eckes states that Nurse Riggs refused his request for a splint and medical tape. Dkt. No. 32-3 at 21-23. Nurse Riggs argues that, even accepting as true that she told him this, policy requires inmates to submit medical-supply requests

on RFHC forms, which Mr. Eckes did not do. Therefore, Nurse Riggs maintains that her failure to immediately provide him with medical supplies, when he had not properly submitted a RFHC, does not exhibit deliberate indifference.

Whether or not there is sufficient evidence of deliberate indifference, Mr. Eckes' claim fails for a more fundamental reason—namely, no reasonable jury could conclude based on the evidence presented that the lack of a splint harmed him. "No matter how serious a medical condition is, the sufferer from it cannot prove tortious misconduct (including misconduct constituting a constitutional tort) as a result of failure to treat the condition without providing evidence that the failure caused injury or a serious risk of injury." *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013).

Mr. Eckes asserts in his sworn Complaint that his fracture became "m[ore] severe[] . . . due to not wearing my splin[t] that was ordered by Dr. Byrd." Dkt. No. 2 at 4. This is the only evidence that even arguably suggests that Mr. Eckes was injured by Nurse Riggs' failure to provide him a splint in April 2018. But no reasonable jury could conclude that the lack of splint injured him based on this evidence when it is considered along with the undisputed evidence submitted by Nurse Riggs.

Dr. Byrd ordered Mr. Eckes to wear a splint in February 2018 until Mr. Eckes' appointment with the orthopedic specialist. The orthopedic specialist saw Mr. Eckes on March 2, 2018, and ordered Mr. Eckes to wear a buddy strap instead of a splint. Specifically, the splint was discontinued because it hyperextended Mr. Eckes' finger, which the orthopedic specialist said should be avoided. It was not until April 2018 when Nurse Riggs denied Mr. Eckes a splint—that is, it was *after* the orthopedic specialist decided that Mr. Eckes should no longer wear one. Dkt. No. 32-1 at 4.

Against this evidence, Mr. Eckes' vague assertion that the lack of splint ordered by Dr. Byrd made his fracture "more severe" is insufficient to create an issue of fact given the orthopedic specialist's subsequent conclusion—and Dr. Byrd's implementation of that conclusion—that a splint should not be worn. When considered with the undisputed evidence that the orthopedic specialist determined that a splint would make Mr. Eckes' fracture worse, no reasonable jury could conclude that the lack of splint injured Mr. Eckes based solely on Dr. Byrd's outdated and superseded treatment plan. This is especially true given the undisputed evidence shows that Mr. Eckes' fracture fully healed; subsequent evaluation revealed normal x-ray results and that Mr. Eckes had a full range of motion without pain. Dkt. No. 32-1 at 8-9.

Because no reasonable jury could conclude that the lack of a splint in April 2018 injured Mr. Eckes or placed him at serious risk thereof, Nurse Riggs is entitled to summary judgment on this claim as well.

### IV.
### Conclusion

For the reasons explained, Nurse Riggs's unopposed motion for summary judgment is **granted**. Dkt. No. 30. Final Judgment in accordance with this Order shall issue.

**IT IS SO ORDERED.**

Date: 6/19/2019

_William T. Lawrence_
Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Distribution:

AUSTIN ECKES
228699
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Britney Jade McMahan
KATZ KORIN CUNNINGHAM, P.C.
bmcmahan@kkclegal.com